UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ALEXANDRE KHADJIEV,

        Petitioner,

v.                              Case No. 3:26-cv-822-MMH-MCR

FIELD OFFICE DIRECTOR, MIAMI
FIELD OFFICE, U.S. IMMIGRATION
AND CUSTOMS ENFORCEMENT,

        Respondent.

_____

## ORDER

Petitioner Alexandre Khadjiev, an immigration detainee, initiated this action through counsel by filing a Verified Petition for Writ of Habeas Corpus (Doc. 1) on April 9, 2026. In the Petition, he argues that his prolonged detention violates the Fifth Amendment's Due Process Clause as the Supreme Court construed it in Zadvydas v. Davis, 533 U.S. 678 (2001), and his Order of Supervision (OSUP) was improperly revoked. Respondents filed a Response to Verified Petition for Writ of Habeas Corpus (Doc. 4; Response) with exhibits (Docs. 4-1 through 4-5). Khadjiev filed a counseled Reply (Doc. 5). This case is ripe for review

## II. Background

Khadjiev is a citizen of the former Union of Soviet Socialist Republics (USSR); he entered the United States on March 27, 1993, with an F1 student visa. Petition at 3. Khadjiev was subsequently accorded lawful permanent residence. Id. On September 4, 2001, Khadjiev was convicted in Maryland of Robbery with a Dangerous Weapon and sentenced to a 15-year term of imprisonment with a 13.5-year suspended sentence. Id.

The Department of Homeland Security (DHS) then initiated removal proceedings. Id. Khadjiev's order of removal became final on February 20, 2003. Id. at 4. According to Khadjiev, he remained in DHS custody from February 20, 2003, to July 10, 2003, when he was released on an OSUP. Id. In 2006, DHS detained Khadjiev for five days following a criminal conviction in Virginia. Id. In 2013, DHS again detained Khadjiev for five days following a criminal conviction in Virginia. Id. And in 2021, DHS detained Khadjiev for a few hours following a criminal conviction. Id.

On December 19, 2025, Khadjiev was arrested in St. Augustine, Florida for Petit Theft. Id. at 4–5. After the case was dismissed, on February 10, 2026, DHS again detained Khadjiev. Id. at 5.

## III. Analysis

In Count One of his Petition, Khadjiev argues that he is entitled to release under Zadvydas, because his post-removal order detention exceeds six

months and there is no significant likelihood of removal in the reasonably foreseeable future. Petition at 20. Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. See Johnson v. Guzman Chavez, 594 U.S. 523, 543–44 (2021) ("And § 1231 explains what to do if the alien is ordered removed."); see also Deshati v. Noem, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025)[1] ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2).

Nevertheless, in Zadvydas, 533 U.S. at 690, the Supreme Court held that indefinite detention of aliens raises serious constitutional concerns. Once an order of removal is final, DHS should make every effort to remove the alien within a reasonable time. Id. at 701. The government may detain an alien beyond the statutory removal period if he is, among other things, a criminal alien or the Attorney General has determined the alien is a risk to the community or unlikely to comply with the order of removal. 8 U.S.C.

---

[1] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

§ 1231(a)(6). The Supreme Court in Zadvydas held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. Id. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed and the alien "'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,'" the burden then shifts to the Government to provide evidence sufficient to rebut that showing. Id. at 1052 (quoting Zadvydas, 533 U.S. at 701). Thus, "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id. If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a significant likelihood of removal in the reasonably foreseeable future. Zadvydas, 533 U.S. at 701.

Here, the Court first considers whether the presumptively reasonable six-month period has expired. Courts have used various methods to calculate the six-month period. Some courts have considered in the aggregate all periods of detention following an order of removal, regardless of whether the periods

4

of detention were consecutive. See Jaranow v. Bondi, 819 F. Supp. 3d 1229, 1236 (W.D. Wash. 2026) (collecting cases from the Ninth Circuit that "have found that the six-month period of detention need not be consecutive to reach the limit established in Zadvydas"); Patel v. Bondi, No. CV 25-16218 (KMW), 2025 WL 3294353, at *2 (D.N.J. Nov. 26, 2025) (finding that the court must "consider the entire period of [the p]etitioner's detention"—not just the current length of detention). Other courts have not—instead they have determined that each period of detention restarts the removal-period clock. See Barrios v. Ripa, No. 1:25-cv-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) (rejecting a petitioner's argument "that his detention should be counted in the aggregate based upon his prior detentions," because doing so would raise constitutional concerns to "any subsequent period of detention, even one day," "[a]nd adjudicating the constitutionality of every re-detention would obstruct an area that is in the discretion of the Attorney General—effectuating removals"); Liu v. Carter, No. 25-3036-JWL, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025) ("[T]he removal-period clock restarts when an alien subject to a removal order is again detained by ICE."). Still other courts appear to have determined that the presumptively reasonable six-month period includes the 90-day statutory removal period and the 90-days immediately thereafter and expires once that time has run. See Beltran v. Ripa, No. 2:25-cv-01174-SPC-NPM, 2026 WL 21252, at *2 (M.D. Fla. Jan. 5, 2026).

Respondents contend that the authority to detain Khadjiev remains within the presumptively reasonable six-month period because, considering only Khadjiev's most recent detention, as of the date of the filing of the Petition, DHS had detained Khadjiev for approximately 58 days. Response at 5. The Court is not persuaded that the presumptively reasonable period of detention restarts with each new detention in every circumstance. Instead, the Court finds that once an individual has been detained for more than six consecutive months after his final order of removal is entered, he has met the first prong of the Zadvydas test. Here, ICE previously detained Khadjiev for over a year—between February 20, 2003, and June 24, 2004.[2] As such, Khadjiev has already been detained beyond the presumptively reasonable six-month period.

Because the six-month period for presumptively reasonable detention has expired, Zadvydas's burden-shifting framework applies. Khadjiev has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. Indeed, despite DHS's efforts for twenty-three years to remove Khadjiev, DHS has failed to remove him. Petition at 16. Khadjiev asserts that he is "effectively

---

[2] In his Petition, Khadjiev states he was detained from February 20, 2003, to July 10, 2003. See Petition at 4. However, his detention history shows DHS detained him until June 24, 2004. See Doc. 4-4 at 1; see also Doc. 4-2 at 2. Respondents use this date in their procedural history, see Response at 2, and Khadjiev adopts this date in his Reply, see Reply at 5. Given the evidence and the parties' agreement, the Court finds DHS detained Khadjiev from February 20, 2003, to June 24, 2004.

6

stateless" because the USSR no longer exists as a sovereign state. Id. According to Khadjiev, DHS has sought travel documents from Russia, Georgia, Australia, Spain, and Canada, to no avail. Id. And there is no evidence that any other country has been willing to accept him. Thus, the burden shifts to Respondents.

The Court finds that Respondents have not submitted evidence sufficient to rebut Khadjiev's showing that there is no significant likelihood of removal in the reasonably foreseeable future. Indeed, they have submitted absolutely no evidence to demonstrate Khadjiev's removal is imminent. They make no representations that DHS has recently obtained any travel document for Khadjiev, that any country intends to accept Khadjiev, or that DHS has communicated with any country regarding Khadjiev since it detained him. Considering this record, the Court finds that Respondents have failed to show that there is a significant likelihood Khadjiev will be removed in the reasonably foreseeable future. Therefore, Khadjiev is entitled to release from detention under Zadvydas.

Because the Court will grant the Petition on the basis of Khadjiev's Zadvydas claim in Count One, it need not, and does not, address Khadjiev's

remaining claims.[3] <u>See</u> <u>Banks v. Dretke</u>, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative"); <u>see, e.g.</u>, <u>Pena-Gil v. Lyons</u>, No. 25-CV-03268-PAB-NRN, 2025 WL 3268333, at *4 (D. Colo. Nov. 24, 2025) ("Because the Court will grant petitioner's petition on the basis of his <u>Zadvydas</u> claims, . . . it need not reach petitioner's remaining claims that contest petitioner's detention.").

Accordingly, it is **ORDERED**:

1.      Khadjiev's Verified Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as to Count One. Respondents shall release Khadjiev **within 24 hours** of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected. Khadjiev shall be subject to his preexisting Order of Supervision.

---

[3] Insofar as Khadjiev requests attorney's fees, he may make such a request in a separate motion, if appropriate. <u>See</u> Local Rule 7.01, United States District Court, Middle District of Florida. Any such motion must be supported by a memorandum of law.

2.     The **Clerk** is directed to terminate any motions, enter judgment granting the Petition as to Count One, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of May, 2026.

MARCIA MORALES HOWARD
United States District Judge

Jax-9 5/28
c:     Counsel of Record

9